1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

CALIFORNIA COSTUME
COLLECTIONS, INC.,

       Plaintiff,

    v.

PANDALOON, LLC.,

       Defendant.

Case No. 2:21-cv-01323-JWH-JEMx

**MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION TO DISMISS COUNT THREE OF PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM [ECF No. 27]**

Before the Court is the motion of Defendant Pandaloon, LLC to dismiss Count Three of the Complaint filed by Plaintiff California Costume Collections, Inc. ("CCC").[1]  The Court finds this matter appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support and in opposition,[2] the Court **GRANTS** the Motion **in part** for the reasons set forth below.

## I.  BACKGROUND

### A.  Procedural Background

In February 2021, CCC filed its Complaint, thereby commencing this action.  In its Complaint, CCC asserts claims against Pandaloon for declaratory judgment of non-infringement, invalidity, and unenforceability of U.S. Design Patent No. D806,325 (the "D325 Patent") for a "Pet Costume."  Pandaloon is the assignee of the D325 Patent,[3] and Pandaloon has accused CCC of infringing it.[4]  CCC also asserts related state law claims against Pandaloon under Cal. Bus. & Prof. Code § 17200.[5]

In July 2021, Pandaloon filed the instant Motion to dismiss Count Three of the Complaint—in which CCC alleges that the D325 Patent is unenforceable due to inequitable conduct—on the ground that it fails to state a claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Pandaloon's Motion is fully briefed.

---

[1]    Def. Pandaloon's Mot. to Dismiss Count Three for Failure to State a Claim (the "Motion") [ECF No. 27].

[2]    The Court considered the following papers and all attachments thereto: (1) Compl. (the "Complaint") [ECF No. 1]; (2) the Motion; (3) Pl.'s Opp'n to the Motion (the "Opposition") [ECF No. 29]; and (4) Def.'s Reply in Supp. of the Motion (the "Reply") [ECF No. 31].

[3]    *See* D325 Patent [ECF No. 1-1] 5.

[4]    *See generally* Complaint.

[5]    *Id.*

**B.      Factual Background**

**1.      Design Background**

Eugenia Judy Chen is the named inventor on the D325 Patent,[6] and, as noted above, Pandaloon is the assignee.  The application for the D325 Patent was filed on June 4, 2017, and the patent issued on December 26, 2017.[7]  The D325 Patent claims "the ornamental design for a pet costume, as shown and described."[8]  Figure 1 depicts "a front perspective view of a pet costume showing [the] new design."[9]



---

[6]    *Id.*

[7]    *Id.*

[8]    *Id.*

[9]    *Id.*

1  Figure 8 depicts "a top-front perspective view" of the costume," shown as used
2  by a pet.



### 2.    Design Dispute

CCC has been selling pet costumes through brick-and-mortar and online retailers since 2011.[10]  During 2011 and 2012, CCC developed and began selling a series of pet costumes with faux front limbs and a body suit covering the pet's actual front limbs, which creates an illusion of a standing character featuring the pet's face.[11]  Since then, CCC has developed at least 10 styles of pet costumes using this concept.[12]  CCC sells its pet costumes on Amazon.[13]

---

[10]    *Id.* at ¶¶ 16-18.
[11]    *Id.* at ¶ 19.
[12]    *Id.* at ¶ 20.
[13]    *Id.* at ¶ 10.

After Pandaloon saw CCC's pet costumes for sale, Pandaloon advised Amazon that it believes that CCC's costumes infringe the D325 Patent. Amazon responded by deactivating CCC's listings for those costumes.[14] Pandaloon also transmitted a cease and desist letter to CCC.[15]  In its response to Pandaloon's letter, CCC denied that its costumes infringe the D325 Patent and argued that the D325 Patent is invalid in view of several prior art pet costumes that had been sold for years before the application for the D325 Patent was filed.[16]  For example, CCC provided evidence of a Teddy Bear pet costume (made by a company called Rubies) that has been on sale since February 2016.[17]



As another example, CCC asserted that it has been selling its Gingerbread Pup costume since 2013.[18]

---

[14]  *Id.* at ¶¶ 9 & 10.

[15]  *Id.* at ¶ 21; *see also id.*, Ex. 1 ("Exhibit 1") [ECF No. 1-1].

[16]  *Id.* at ¶¶ 24-26.

[17]  *Id.* ¶ 26.

[18]  *See id.*, Ex. 2 ("Exhibit 2") 2-3 [ECF No. 1-2].



Pandaloon did not reply to CCC's response letter.  In an effort to bring the parties' dispute to a head, CCC filed this declaratory relief action.[19]  CCC alleges that its affected product listings have been delisted on Amazon since August 2020, and, as a result, CCC's product ranking and reputation have suffered.[20]

## II.  LEGAL STANDARDS

### A.    Rule 12(b)(6) Pleading Sufficiency

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint.  *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In ruling on a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Am. Family Ass'n v. City & County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir. 2002).  Although a complaint attacked through a Rule 12(b)(6) motion "does

---

[19]    *Id.* at ¶¶ 28-33.

[20]    *See id.*

1  not need detailed factual allegations," a plaintiff must provide "more than labels
2  and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
3        To state a plausible claim for relief, the complaint "must contain
4  sufficient allegations of underlying facts" to support its legal conclusions. *Starr*
5  *v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  "Factual allegations must be
6  enough to raise a right to relief above the speculative level on the assumption
7  that all the allegations in the complaint are true (even if doubtful in fact) . . . ."
8  *Twombly*, 550 U.S. at 555 (citations and footnote omitted).  Accordingly, to
9  survive a motion to dismiss, a complaint "must contain sufficient factual matter,
10  accepted as true, to state a claim to relief that is plausible on its face," which
11  means that a plaintiff must plead sufficient factual content to "allow[] the Court
12  to draw the reasonable inference that the defendant is liable for the misconduct
13  alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks
14  omitted).  A complaint must contain "well-pleaded facts" from which the Court
15  can "infer more than the mere possibility of misconduct." *Id.* at 679.

16  **B.    Inequitable Conduct**

17        "Inequitable conduct is an equitable defense to patent infringement that,
18  if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson &*
19  *Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011).  Rule 9(b) governs inequitable
20  conduct claims.  *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326
21  (Fed. Cir. 2009).  "Rule 9(b) requires that in all averments of fraud or mistake,
22  the circumstances constituting fraud or mistake shall be stated with
23  particularity." *Id.* (internal quotation marks and bracket omitted).  To meet this
24  standard, like other circuits, the Federal Circuit requires the pleading party to
25  identify "the specific who, what, when, where, and how of the material
26  misrepresentation or omission committed before the PTO." *Id.* at 1327.

27        Thus, a well-pleaded claim for inequitable conduct must allege facts
28  demonstrating that "(1) an individual associated with the filing and prosecution

of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false information; and (2) the individual did so with a specific intent to deceive the PTO." *Id.* at 1327 n.3. "A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)." *Id.* at 1326-27.

With respect to materiality, "[w]here a patent applicant fails to disclose prior art to the PTO, the prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Therasense*, 649 F.3d at 1292.

## III.  DISCUSSION

Pandaloon moves to dismiss Count Three of CCC's Complaint, which alleges unenforceability of the D325 Patent due to inequitable conduct. Pandaloon seeks the dismissal of Count Three on the basis that it is facially deficient because the two alleged prior art references fail to meet the required "but-for" materiality standard and because CCC's allegations fail to meet the heightened pleading requirements of Rule 9(b).

### A.    But-For Materiality

In Count Three of its Complaint, CCC alleges that the inventor—Chen— and her attorney "knew that the Teddy Bear pet costume from Rubies, and CCC's Gingerbread Pup costume, were widely available for sale in the marketplace."[21]  CCC also alleges that the inventor and her attorney "knew that the Teddy Bear and/or Gingerbread pet costumes were material to patentability of the [D]325 Patent, and that the USPTO [*i.e.*, the U.S. Patent and Trademark

---

[21]    Complaint ¶ 61.

1    Office] would not have issued the [D]325 Patent had it been aware of either of

2    these prior art costumes."[22]

3        ### 1.    Rubies Teddy Bear Costume

4        Pandaloon argues that the Rubies Teddy Bear costume cannot be but-for

5    material prior art as a matter of law because the PTO considered that costume

6    during prosecution.[23]   Pandaloon observes that the examiner cited the Rubies

7    Costume in a July 25, 2017, office action.[24]   The Rubies costume also appears as

8    a reference on the face of the D325 Patent.[25]

9        CCC does not contest that the examiner considered the Rubies Teddy

10   Bear costume, but it argues that neither the inventor nor her attorney disclosed

11   the costume "in Pandaloon's Information Disclosure Statement *at the time* the

12   [D]325 Patent application was filed."[26]

13       CCC provides no authority for the proposition that a prior art omission on

14   a disclosure statement can give rise to an inequitable conduct claim even when

15   the examiner ultimately considers that prior art.[27]   Indeed, the Federal Circuit

16   has ruled to the contrary:  "An applicant cannot intentionally withhold a

17   reference actually considered by the PTO, even though the applicant may not

18   have disclosed the art."  *Litton Sys. Inc. v. Honeywell, Inc.*, 87 F.3d 1559, 1571

19

20   ────────────────

21   [22]    *Id.* at ¶ 63.

     [23]    Motion 1:9-10, 1:20-22, & 2:8-12.

22   [24]    *Id.* at 8:6-10 (citing Ex. A, Office Action at 10 (Non-Patent Document X)
     [ECF No. 27-2]; 37 C.F.R. § 1.56 ("[u]nder this section, information is material
23   to patentability when it is not cumulative to information already of record or
     being made of record in the application").

24   [25]    *See* D325 Patent 2.

25   [26]    Opposition 6:15-17 (emphasis added).

26   [27]    Likely recognizing this principle, in another section of its Opposition
     CCC essentially concedes that the Rubies costume cannot be but-for material for
27   inequitable conduct purposes.  *See* Opposition 11:6-8 (arguing—without
     mentioning the Rubies costume—that "[t]he prior art Gingerbread Pup costume
28   is but-for material to patentability of the [D]325 Patent for the reasons discussed
     above and Pandaloon admits that it was never disclosed to the PTO").

(Fed. Cir. 1996) (concluding that no inequitable conduct existed where a patentee had, in fact, intentionally withheld a reference, but that reference was ultimately considered by the examiner), *vacated on other grounds by Honeywell, Inc. v. Litton Sys., Inc.*, 520 U.S. 1111 (1997).

Courts continue to apply this rule.  *See, e.g.*, *Techshell, Inc. v. Max Interactive, Inc.*, 2019 WL 4422682, at *3 (C.D. Cal. Aug. 5, 2019) (concluding that when "[t]he patent examiner [is] well aware of [prior art], and indeed reviewed [the prior art], [especially where] the examiner [initially] rejected the proposed patent claims over it," there can be no showing of "either but-for materiality or a reasonable inference of an intent to deceive" regarding that prior art); *ParkerVision, Inc. v. Qualcomm Inc.*, 924 F. Supp. 2d 1314, 1319 (M.D. Fla. 2013) ("[T]he PTO was aware of the [prior art] reference, as evidenced by the reference's citation on the face of the patent, and still issued the patent.  One cannot assume that a PTO examiner is an ignorant rube who is easily misled by attorney argument, hyperbole, or understatement.").

Accordingly, because the examiner considered it, the Rubies Teddy Bear costume cannot be but-for material for inequitable conduct purposes. Construing the allegations in the light most favorable to CCC, however, to the extent that the Rubies allegations may be relevant to CCC's inequitable conduct argument regarding the Gingerbread Pup costume (*i.e.*, arguing that withholding the Rubies Teddy Bear costume is circumstantial evidence supporting intent to deceive concerning withholding the Gingerbread Pup costume, given CCC's invalidity arguments), the allegations are plausibly related to that theory.

### 2.    Gingerbread Pup Costume

Pandaloon also argues that CCC's Gingerbread Pup costume cannot be but-for material prior art because it "does not remotely resemble the design of the D[]325 patent, and thus cannot plausibly meet the 'but-for' materiality

standard."[28]  Pandaloon asserts that "[o]ther than also being a pet costume, there is no other point of similarity between the Gingerbread Costume and the claimed design of the D[]325 patent."[29]  To illustrate that point, Pandaloon provides the following graphical comparison.




**Gingerbread Costume**          **D'325 Patent**

Pandaloon also contends that if the Gingerbread Pup costume were material, then CCC would have raised it as part of the invalidity count (Count Two) in its Complaint.[30]

CCC responds that the Gingerbread Pup costume is but-for material because it "contains elements Pandaloon used to distinguish its design from the prior art, and would have alone anticipated the [D]325 Patent claim, or at the very least, would have rendered it obvious in combination with the Rubies' Teddy Bear costume."[31]  CCC also argues that "Pandaloon's [dissimilarity] argument, which focuses on its own assessment of the merits, is improper at this stage where CCC's allegations must be taken as true."[32]  Further, CCC notes

---

[28]    Motion 2:26-3:1.
[29]    *Id.* at 9:5-8.
[30]    *Id.* at 9:24-10:1.
[31]    Opposition 6:19-23.
[32]    *Id.* at 6:26-28.

1    that the Complaint lists the Rubies Teddy Bear costume as ***one example*** of

2    invalidating prior art, but it also incorporates by reference Exhibit 2, detailing

3    how the Gingerbread Pup costume is invalidating.[33]

4           The Court declines Pandaloon's request to make a finding at this stage

5    that the designs of the D325 Patent and Gingerbread Pup costume are so

6    dissimilar that CCC's but-for materiality allegations fail as a matter of law.

7    Typically, design patent infringement is a question of fact, "unless the claimed

8    design and accused product are so plainly dissimilar that it is implausible that an

9    ordinary observer would confuse them." *Enerlites, Inc. v. Century Prod. Inc.*,

10   2018 WL 4859947, at *3 (C.D. Cal. Aug. 13, 2018). Likewise, determining

11   "[w]hich features would be significant to the ordinary observer is a question of

12   fact." *Dioptics Med. Prod., Inc. v. IdeaVillage Prod. Corp.*, 2010 WL 4393876, at

13   *2 (N.D. Cal. Oct. 29, 2010) (citing International *Seaway Trading Corp. v.*

14   *Walgreens Corp.*, 589 F.3d 1233, 1241-42 (Fed. Cir. 2009)). Those infringement-

15   related factual questions also pertain to what the examiner would have

16   considered material (*e.g.*, round head with pet-face cutout, faux limbs,

17   appearance of standing). The costumes are not so dissimilar that this question

18   can be resolved on a motion to dismiss.[34]





**Gingerbread Costume**          **D'325 Patent**

---

[33]    *Id.* at 7:10-15.

[34]    The Court also declines to reach CCC's arguments concerning
Pandaloon's response to the office action. Setting aside the fact that the
response contains no discussion of design elements, those allegations are not in
the Complaint.

-12-

For the reasons stated above, the Court **DENIES** the motion with respect to Pandaloon's but-for materiality arguments.

**B.     Rule 9(b) Pleading Standard**

Pandaloon seeks dismissal of CCC's inequitable conduct claim on the additional ground that CCC fails to plead with particularity knowledge of prior art, knowledge of the materiality of that prior art, and specific intent.  First, Pandaloon argues that the Complaint fails to allege that the inventor or her attorney were aware of either the Rubies Teddy Bear or the CCC Gingerbread Pup costume during prosecution, that either believed that the references were material, and that either intentionally withheld them.[35]  Pandaloon asserts that merely speculating about knowledge, where the prior art costumes were "widely available in the marketplace," is insufficient to plead subjective knowledge under Rule 9(b).[36]

Second, Pandaloon argues that knowledge of materiality cannot be alleged on information and belief alone and the Complaint contains no facts supporting the conclusory allegation that Pandaloon "made a deliberate decision not to disclose" the prior art.[37]

Finally, Pandaloon contends that the "inequitable conduct allegations fail to show that an intent to deceive [is] the 'single most reasonable inference' for not citing the Rubies or Gingerbread Costumes to the USPTO," especially when multiple reasonable inferences can be drawn, including that the inventor and her attorney lacked knowledge of the costumes, believed that the costumes were immaterial, or believed that the costumes were cumulative.[38]

---

[35]   Motion 3:9-14.

[36]   *Id.* at 3:14-18 & 4:14-26; *see also id.* at 11:6-15 & 12:10-17.

[37]   *Id.* at 5:13-16; *see also id.* at 13:25-14:8 & 15:4-6.

[38]   *Id.* at 18:4-18.

1    CCC responds that Pandaloon misstates the standard for *pleading*

2    inequitable conduct, which does not require *proving* by clear and convincing

3    evidence that intent to deceive is the single most reasonable inference.  Rather,

4    merely pleading such intent through plausible allegations is sufficient.[39]

5    Moreover, CCC maintains that its allegations are sufficient because it claims

6    that the inventor and her attorney "knew that the Teddy Bear pet costume from

7    Rubies, and CCC's Gingerbread Pup costume, were widely available for sale in

8    the marketplace" and that a reasonable inference can be drawn that they "made

9    a deliberate decision not to disclose the Teddy Bear or Gingerbread pet

10   costumes to the patent examiner because they knew that Gingerbread Pup

11   costume, alone or in combination with the Rubies' Teddy Bear costume, would

12   anticipate and/or render obvious Pandaloon's claimed design."[40]  Based upon

13   those facts, CCC asks the Court to "draw the reasonable inference that

14   Pandaloon withheld the Gingerbread Pup costume with an intent to deceive the

15   PTO."[41]

16        To state a claim for inequitable conduct, a plaintiff must allege with

17   specificity:  (1) knowledge of the uncited reference; (2) knowledge of the

18   reference's materiality; and (3) the specific intent to deceive the PTO by

19   withholding that reference.  *See Therasense*, 649 F.3d at 1289-90.  "[A]lthough

20   'knowledge' and 'intent' may be averred generally, a pleading of inequitable

21   conduct under Rule 9(b) must include sufficient allegations of *underlying facts*

22   from which a court may reasonably infer that a specific individual (1) knew of the

23   withheld material information or of the falsity of the material misrepresentation,

24   and (2) withheld or misrepresented this information with a specific intent to

25   deceive the PTO."  *Exergen*, 575 F.3d at 1328–29 (emphasis added).  "A

26

27   [39]   Opposition 8:13-16.

28   [40]   *Id.* at 9:19-23 (citing Complaint ¶¶ 27, 60, 61, & Exhibit 2).

     [41]   *Id.* at 9:26-28.

reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Id.* at 1329 n.5.

### 1.    Knowledge of the References

To plead knowledge of the relevant prior art costumes, the Complaint alleges only the following:

> 61.    On June 4, 2017, when Eugenia Judy Chen and her attorney, Stanton Braden from Mu Patents, filed the patent application that later issued as the [D]325 Patent, they knew that the Teddy Bear pet costume from Rubies, and CCC's Gingerbread Pup costume, were widely available for sale in the marketplace.[42]

In support of that allegation, in its Opposition CCC reiterates the "wide availability" of the prior art costumes and concludes that "Pandaloon either knew, or should have known, that the Gingerbread Pup costume would be but-for material to the examiner."[43]

Those allegations are insufficient to support a plausible claim of knowledge for inequitable conduct purposes. In *Therasense*, the Federal Circuit established that a "should have known" standard is insufficient. *See Therasense*, 649 F.3d at 1290 ("a 'should have known' standard does not satisfy th[e] intent requirement" that "the applicant *made a deliberate decision* to withhold a *known* material reference") (emphasis in original); *see also Frazier v. Roessell Cine Photo Tech Inc.*, 417 F.3d 1230, 1238 (Fed. Cir. 2005) ("this court has repeatedly reaffirmed the proposition that [a]s a general rule, there is no duty to conduct a prior art search, and thus there is no duty to disclose art of which an applicant could have been aware") (quotation marks omitted).

---

[42]    Complaint ¶ 61.

[43]    Opposition 10:11-12.

Applying that rule, district courts have dismissed knowledge allegations when those allegations are based only upon an allegation that information was widely available. *See, e.g.*, *BlackBerry Ltd. v. Typo Prod. LLC*, 2014 WL 1867009, at \*2 (N.D. Cal. May 8, 2014) ("All that [Defendant] has alleged is that a material reference which was widely available was not disclosed to the PTO. That is not sufficient to plead inequitable conduct."); *C.R. Bard, Inc. v. Med. Components, Inc.*, 2019 WL 8137358, at \*2 (D. Utah July 25, 2019) ("although Defendant's allegations may lend support to the argument that [Plaintiff] should have known of specific undisclosed references and their materiality given that they were widely available and even cited by [Plaintiff] in other documents," those allegations failed to plead knowledge) (quotation marks omitted, alteration in original).

Because the Complaint alleges inferred knowledge based only upon the fact that the costumes were widely available, CCC has not pleaded its inequitable conduct claim with the required particularity concerning prior art knowledge.

### 2.   Knowledge of Materiality

To plead knowledge of materiality of the relevant prior art, the Complaint alleges only the following:

> 63.   Upon information and belief, Ms. Chen and Mr. Braden knew that the Teddy Bear and/or Gingerbread pet costumes were material to patentability of the [D]325 Patent, and that the USPTO would not have issued the [D]325 Patent had it been aware of either of these prior art costumes.[44]

---

[44]   Complaint ¶ 63.

1    CCC also attaches to the Complaint its patent-related correspondence with
2    Pandaloon, in which CCC explains to Pandaloon why it believes that the
3    costumes would have been material to the examiner.[45]

4          Although "[p]leading on 'information and belief' is permitted under
5    Rule 9(b) when essential information lies uniquely within another party's
6    control," it is permissible "only if the pleading sets forth the specific facts upon
7    which the belief is reasonably based." *Exergen*, 575 F.3d at 1330; *see also U.S.,* ex
8    rel. *Carver v. Factor Nutrition Labs, LLC*, 2010 WL 5071696, at *2 (N.D. Cal.
9    Dec. 7, 2010) ("[A]s to matters peculiarly within the opposing party's
10   knowledge, allegations based on information and belief may satisfy Rule 9(b) if
11   they also state the facts upon which the belief is founded.").

12         The Complaint does not include any ***facts*** upon which CCC's belief is
13   based.  To allege knowledge of materiality sufficiently, a plaintiff must "explain
14   both 'why' the withheld information is material and not cumulative, and 'how'
15   an examiner would have used this information in assessing the patentability of
16   the claims." *Exergen*, 575 F.3d at 1329-30.  The attached correspondence does
17   not fill that void because it reflects CCC's belief; even if the correspondence
18   could be construed to impart knowledge of the claimed materiality to the
19   inventor or her attorney, it post-dates the prosecution of the D325 Patent and
20   therefore cannot show knowledge of materiality at the relevant time.

21         Unlike knowledge of a prior art reference—which is measured
22   subjectively—knowledge of materiality of a reference can be measured
23   subjectively ***or*** objectively.  *See M. Eagles Tool Warehouse, Inc. v. Fisher Tooling*
24   *Co.*, 439 F.3d 1335, 1341 (Fed. Cir. 2006) ("In an inequitable conduct
25   determination based upon a nondisclosure, the applicant must know, or should
26   have known, of the materiality of the reference for an inference of intent.").

27

28   [45]     *See id.* at Exhibit 2.

The Complaint does not allege that the inventor and her attorney "should have known" that the references were material, nor does it contain facts supporting such a conclusion.

Because CCC fails to plead in its Complaint any underlying facts supporting the information-and-belief allegation of knowledge of materiality, CCC has not pleaded the inequitable conduct claim with the required particularity concerning materiality knowledge.

### 3. Specific Intent to Deceive

To plead specific intent to deceive, the Complaint alleges only the following:

> 64.   Ms. Chen and Mr. Braden made a deliberate decision not to disclose the Teddy Bear or Gingerbread pet costumes to the patent examiner and thus committed fraud upon the USPTO.[46]

In support of that allegation, CCC argues, "Given these well-ple[a]d[ed] facts, the Court may draw the reasonable inference that Pandaloon withheld the Gingerbread Pup costume with an intent to deceive the PTO."[47]

But CCC has pleaded no facts, and thus has provided nothing, from which such an inference may be drawn. "Intent to deceive can not be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent." *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1116 (Fed. Cir. 1996). "A conclusory allegation of specific intent is insufficient." *BlackBerry*, 2014 WL 1867009, at *3 (complaint alleged that failure to disclose prior art "was done with the specific intent to deceive the PTO," but the plaintiff did "not plead[] any facts from which [the court] can reasonably make this inference"). Although the Court "may infer intent from indirect and

---

46    Complaint ¶ 64.

47    Opposition 9:26-28.

circumstantial evidence because direct evidence of intent is rare," CCC has provided no indirect or circumstantial factual allegations to support its conclusory intent allegation. *See TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1304 (Fed. Cir. 2016) (quotation marks omitted).

Because the Complaint fails to plead any underlying facts supporting the specific-intent-to-deceive allegation, the inequitable conduct claim has not been pleaded with the required particularity concerning intent.

The Court notes, however, that CCC is not required at the pleading stage to allege facts supporting the conclusion that specific intent to deceive is the single most reasonable inference to be drawn from the factual allegations. *See, e.g.*, *Hangzhou Chic Intelligent Tech. Co. v. Razor USA LLC*, 2016 WL 10518582, at *2 (C.D. Cal. Dec. 19, 2016) (inequitable conduct need not be "the single most reasonable inference" drawn from the alleged facts at the pleading stage); *Human Genome Sciences, Inc. v. Genentech, Inc.*, 2011 WL 7461786, at *3 (C.D. Cal. Dec. 9, 2011) ("[i]n deciding a motion to dismiss an inequitable conduct claim, the level of scrutiny applied to the pleadings does not appear to be so exacting" as to require clear and convincing evidence or meeting the single-most-reasonable-inference burden, "a mere reasonable inference is quite enough to survive") (citing *Exergen*, 575 F.3d at 1326-27).

## C. Leave to Amend

Leave to amend a claim "shall be freely granted when justice so requires." Fed. R. Civ. P. 15(a); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). In its Opposition, CCC requests that "[i]f the Court finds that CCC has not adequately ple[a]d[ed] any element of its inequitable conduct claim, the Court

-19-

should grant CCC leave to amend its Complaint."[48]  In reply, Pandaloon argues that leave to amend should be denied because any amendment would be futile.[49]

Although CCC did not suggest how it might cure any pleading deficiencies that the Court may find, it did not have the benefit of the Court's ruling on the specific challenges that Pandaloon raised.  Therefore, in the interest of justice, and because Pandaloon will not be prejudiced if the Court grants leave to file a first amended inequitable conduct claim, the Court will allow CCC to amend its inequitable conduct claim, consistent with the analysis and rulings set forth herein.

## IV.  CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.      Pandaloon's Motion is **GRANTED**.  Count Three of CCC's Complaint is **DISMISSED with leave to amend**.

2.      CCC is **DIRECTED** to file an amended pleading, if at all, no later than April 22, 2022.  If CCC chooses to file an amended pleading, then it is also **DIRECTED** to file contemporaneously therewith a Notice of Revisions to Complaint that provides the Court with a redline version that shows the amendments.

3.      If CCC fails to file its amended pleading by April 22, 2022, then the Court will **DISMISS** Count Three of CCC's Complaint **with prejudice**.

4.      Pandaloon is **DIRECTED** to file its response to CCC's operative pleading no later than May 13, 2022.

**IT IS SO ORDERED.**

Dated:  April 7, 2022

John W. Holcomb
UNITED STATES DISTRICT JUDGE

---

[48]      Opposition 11:8-10.

[49]      *See generally* Reply 4:15-6:2.

-20-